McLaughlin, Appellant, *v.* McLaughlin.

54

Argued April 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Harold S. Hampson,* for appellant.

*J. F. Potter,* with him *Potter and Potter,* for appellee.

OPINION BY WOODSIDE, J., September 13, 1962:

This is an appeal from an order of the Court of Common Pleas of Warren County opening a divorce decree which had been entered July 6, 1944, on an action brought by Victor W. McLaughlin charging his wife, Gertrude, with indignities. At that time, the parties had been married twenty-seven years and had five children.

After the entry of the decree, Victor married "Doris", who divorced him February 26, 1947. Later, on July 5, 1954, he married Alma Decker. He died intestate February 21, 1958, and letters of administration were issued to Alma McLaughlin. Gertrude McLaughlin then filed a petition to vacate the divorce decree of July 6, 1944, alleging that it had been fraudulently obtained, particularly by her husband's withholding from the court the knowledge he had of her address, thus denying her notice of the action.

The petition was subsequently amended to ask for the opening of the decree. After a hearing, the court granted the prayer of the petitioner and opened the divorce decree. Alma, as administratrix of Victor's estate, then appealed to this Court.

The divorce decree was valid on its face. The record indicates service upon the respondent by publication made according to law, and the entry of the decree after the taking of testimony before the court. Service by publication is unobjectionable and constitutes due process in Pennsylvania. *Nixon v. Nixon,* 329 Pa. 256, 266, 198 A. 154 (1938); *Knode v. Knode,* 159 Pa. Superior Ct. 210, 48 A. 2d 151 (1946).

It is well settled that a divorce decree can be vacated or stricken off only for a defect apparent on the face of the record. Where new evidence relating to the cause of action must be introduced in order to sustain the attack, the decree should not be vacated or set aside, but should be opened. *Nixon v. Nixon,* supra; *Wisor v. Wisor,* 175 Pa. Superior Ct. 233, 238, 103 A. 2d 498 (1954); Freedman on Law of Marriage & Divorce in Pennsylvania (2d Ed.) Vol. III, §718. As the divorce in this case is valid on its face, the court below properly considered the petition as one to open the judgment rather than to strike it, and properly allowed the amendment to the prayer of the petitioner.

The evidence presented by Gertrude and her witnesses attacked the truthfulness of the evidence relating to her alleged indignities. If the charge of indignities was based upon perjured testimony, as it appears to have been, the husband's false evidence constituted *intrinsic* fraud. Intrinsic fraud in obtaining a divorce decree cannot be raised after the expiration of the term in which the decree was entered. *McFadden v. McFadden,* 91 Pa. Superior Ct. 301, 306 (1927); *Zettlemoyer v. Zettlemoyer,* 79 Pa. Superior

Ct. 405 (1922); Freedman, supra, §§719, 720. Having failed to appeal from the decree, and having failed to petition to open the decree within the term in which it was filed, the petitioner cannot attack the sufficiency of the evidence to support the decree, nor can she attack the truthfulness of the evidence of indignities unless she can first have the court open the decree because of *extrinsic* fraud.

It is only an allegation of extrinsic fraud that will be considered when the petition to open is filed after the term in which the decree is entered. *Wisor v. Wisor,* supra. A fraudulently assumed residence in an attempt to meet jurisdictional requirements is one type of extrinsic fraud. *Wisor v. Wisor,* supra; *Cortese v. Cortese,* 163 Pa. Superior Ct. 553, 63 A. 2d 420 (1949). The residential requirement to secure jurisdiction is not questioned here. The libellant resided in Warren County for four years prior to bringing the divorce action in that county.

The extrinsic fraud alleged here is withholding knowledge of the respondent's residence. The evidence at the hearing to open the decree indicates that the libellant testified falsely at the divorce hearing when he said that he did not know the address of his wife. She was living in Cuba, New York, approximately 75 miles from Warren, Pennsylvania, and there is no doubt that her husband knew her address.

If an unsuccessful party to an action has been prevented from presenting his case by fraud or deception practiced on him by his opponent, as by keeping him in ignorance of the proceeding, an order to set aside the decree and open the case for a new and fair hearing should be affirmed. *U. S. v. Throckmorton,* 98 U.S. 61, 65-9 (1878); *Willetts v. Willetts,* 96 Pa. Superior Ct. 198, 206 (1929); *Carey v. Carey,* 121 Pa. Superior Ct. 251, 183 A. 371 (1936); *Estok v. Estok,* 102 Pa. Superior Ct. 604, 157 A. 356 (1931).

The appellant in this case contends that the fraud of the libellant had nothing to do with the failure of the respondent to receive notice of the divorce hearing. When the divorce was granted, notice to a non-resident respondent, other than by publication, was not required by either statute or rules of court. The Divorce Law of May 2, 1929, P.L. 1237, in effect at the time of the filing and granting of the divorce, did not require that the residence of the respondent be set forth in the libel, or that notice, other than by publication, be given to a respondent residing out of the state. See §§15, 25-30 of The Divorce Law, supra.

It is argued that under the terms of the statute, the rules of court, and the practice then followed in Warren County, the respondent in the divorce action would not have received any notice except by publication, even had the libellant given the respondent's correct address at the hearing, and thus, it was not the conduct of the prevailing party that prevented a fair submission of the controversy. See *Masciulli v. Masciulli*, 194 Pa. Superior Ct. 646, 650, 169 A. 2d 562 (1961). The appellee counters with the suggestion that the judge might have given the respondent notice of the proceedings had he been advised of her correct address. There is no way to know whether or not he would have given her notice at that late date in the proceedings. There is no reason to assume that under the court rules and the practice then followed in Warren County, the court would have given notice to the respondent upon receiving her address during the hearing. At the present time, provision for notice to defendants outside the Commonwealth is made by the Pennsylvania Procedural Rules. See §1124(a)(3). Prior to the adoption of the procedural rule, it was the practice in many counties to provide for notice by local court rules authorized under §66 of The Divorce

Law, supra, but apparently Warren County had no such rule.

The proceeding to open a decree of divorce is equitable in nature. The opening of the decree can be based only upon equitable considerations. *Magistro v. Magistro,* 182 Pa. Superior Ct. 487, 489, 127 A. 2d 758 (1956); *Knode v. Knode,* supra, 159 Pa. Superior Ct. 210, 48 A. 2d 151 (1946).

If this were an action between the libellant and the respondent, the equities would require the opening of the divorce decree to permit the respondent to present her defense to the charges. But, this is not an action between an innocent party and a guilty party. This is an action between two innocent parties, each justified in believing that she was the deceased's lawful wife when he died. Gertrude, we must assume from the finding of the court below, had no knowledge until after McLaughlin's death that he had obtained a divorce decree, or even instituted an action for divorce against her. Alma married and accepted McLaughlin as a husband in good faith without any reason to suspect that the divorce decree entered ten years earlier was invalid. Had she examined the court record, she would have found a decree of divorce valid on its face, and the most meticulous lawyer would have advised her that the divorce decree was valid. The divorce was not obtained by McLaughlin in order to marry Alma, as he married and was divorced by Doris before his marriage to Alma. Thus, there could be no suspicion that Alma was in any way involved in the obtaining of a divorce by McLaughlin from Gertrude. Each wife here involved was defrauded by the same act.

Furthermore, during the 14 years after the divorce decree was signed, Gertrude made no effort to assert any of her rights as a wife. She had not lived with her husband since 1939; she neither received nor sought

support from him for herself; she did not correspond with him, or go to see him, although for 18 years she knew that he lived nearby in Warren. On the other hand, Alma became McLaughlin's wife, and presumably continued to live with him in a marital relationship to the time of his death.

Although technically only an opening of the decree, the order of the court below is actually a vacating of the decree, for the libellant is dead and the action cannot proceed. *Boyd's Appeal*, 38 Pa. 241, 243 (1861). Thus, even if McLaughlin had grounds for a divorce, and these grounds had been truthfully and sufficiently presented at the divorce hearing, there would be no way in which to obtain a divorce decree in this case after the one already entered has been opened.

It has been held that neither the remarriage nor the death of the plaintiff bars the opening of a divorce decree. *Allen v. Maclellan*, 12 Pa. 328 (1849); *Walton v. Walton*, 84 Pa. Superior Ct. 366 (1925); *Boyd's Appeal*, 38 Pa. 241 (1861); *Fidelity Insurance Company's Appeal*, 93 Pa. 242 (1880). However, the death of a plaintiff must be considered in determining the equities. *Magistro v. Magistro, supra*, 182 Pa. Superior Ct. 487, 127 A. 2d 758 (1956). In all of the above cases, the contest was between an innocent wife and the defrauding husband, or between an innocent wife and some third person. A defrauding party is not insulated from the consequences of his conduct by the fact that innocent children or an innocent woman, who married him relying upon a fraudulently obtained decree, must also suffer. *Loiacono v. Loiacono*, 179 Pa. Superior Ct. 387, 394, 116 A. 2d 881 (1955). But here the defrauding party is beyond the reach of the court, which must decide between two innocent women, each justified in believing that she was the legal wife of the defrauding party at the time of his death.

The court below gave this case careful study, filing a lengthy opinion in which it thoroughly analyzed the law and reviewed many cases. But this case differs from those cases in the manner set forth above. Here we believe the equities favor the appellant. The legality of service by publication; the serious doubt that the respondent's failure to receive notice was in any way brought about or affected by the false statement concerning her address made by the libellant at the time of the divorce hearing; and the fact that for many years Gertrude made no effort to resume marital relations with the man she considered her husband, while Alma, equally without fault, was living with him in a justifiable belief that she was his legal wife, are all considerations favoring the appellant. Furthermore, the appellee's long indifference to her husband's marital status in a relatively nearby community, in which she knew for many years that he was residing, contributed to her failure to discover the decree which was on record in Warren County. See *Quinn v. Quinn,* 125 Pa. Superior Ct. 359, 189 A. 705 (1937); *Catts v. Catts,* 35 Pa. Superior Ct. 293 (1908).

Order reversed, costs to be paid by the estate of Victor McLaughlin.