Contakos (et al., Appellant) *v.* Contakos.

446

Argued November 10, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Ralph J. McAllister,* with him *McAllister & McAllister,* for appellant.

*Abraham Pervin,* for appellee.

OPINION BY WOODSIDE, J., December 16, 1964:

This is an appeal from an order of the Court of Common Pleas of Allegheny County vacating a divorce decree which had been entered May 2, 1927, on an action brought by Nicholas Contakos charging his wife, Stamoula, with desertion.[1] Nicholas and Stamoula were married in Greece in 1907. Four children were born to them, two of whom are still living, James, born in 1911, and Pauline, born in 1914.

---

[1] The petition was to vacate the decree. The court below in its opinion said it would treat it as a petition to open, but the order it filed vacated the decree.

One month after the entry of the divorce decree, Nicholas married Margaret Shiffman. Nicholas and Margaret had three children: the first was stillborn on January 2, 1928, and the other two, Mary Louise, born in 1929, and Nancy, born in 1939, are still living.

Nicholas died on October 16, 1961. His will was probated and letters testamentary were issued to Margaret.[2] After the will was probated, Nicholas' son James had the petition to vacate the divorce decree prepared and sent to Greece for execution by his mother, Stamoula. The court below concluded that the 1927 divorce had been fraudulently obtained, and vacated the decree. Margaret, as executrix of Nicholas' estate, appealed to this Court.

The record before the court below and this Court consists of the divorce proceedings, the pleadings to vacate the divorce decree and depositions of Stamoula (who says her correct name is Stavroula), Margaret, Stamoula's brother, her children—Pauline and James, and the clerk of the court where Nicholas filed his naturalization papers; and a copy of the marriage application and license issued to "Nick" Contakos and Margaret Shiffman. Since the testimony before the lower court was entirely by depositions, this Court is equally competent to determine the facts from the printed record, and to make its own inferences and deductions therefrom: *Stanko v. Males,* 390 Pa. 281, 283, 135 A. 2d 392 (1957).

The divorce decree is valid on its face. The record indicates service upon the respondent by publication made pursuant to the Act of March 13, 1815, P. L. 150, 6 Smith L. 286, as amended, which was the applicable law when this action was begun in 1925.

---

[2] The will gave Margaret a life estate in a business building with a one-half remainder to his son James and one-half to his two daughters, Mary Louise and Nancy.

In the divorce proceedings Nicholas filed three affidavits setting forth that the last known address of Stamoula was "Lovotsova, Greece." In the third affidavit, required before placing the case on the hearing list, Nicholas swore that "Respondent returned to Lovotsova, Greece, and has not come back to this country. Respondent's former address was 208 Fifth Avenue, McKeesport . . ." The respondent never lived in this country, but there was no effort on the part of Nicholas to misrepresent this fact to the court. At the divorce hearing *he* testified on direct examination that Stamoula had *never* left Greece, and he called a witness for the sole purpose of proving that his wife had never been in McKeesport.

In all three affidavits made by Nicholas, he gave the respondent's last known address as Lovotsova, Greece. He stated that her present address was not known. The evidence is insufficient to establish that Nicholas had heard from her immediately before making the affidavit or that he had any definite information concerning her whereabouts at that precise time. Furthermore, there is no evidence that her last known address was not correctly stated. He gave Lovotsova as the town in which she lived. He testified that she lived there with his parents. In her action to set aside the decree, she testified that she lived with his parents in Crokec Alivetsova. There is no evidence that these are not the same town. From our own investigation, we discovered that the two are different names for the same village.

Even if Nicholas had inaccurately set forth the exact last known address of the respondent, service by publication was sufficient under the divorce law in 1925, if the respondent could not be found in the county where the action was brought. The provisions of today's law requiring notice by registered mail in addition to the publication cannot justify the upsetting

of the divorce decree properly entered under the law relied upon by Nicholas through his attorney in 1925.

Stamoula next contends that she had not deserted her husband, and that his testimony to prove the desertion was false. If this were so, the false evidence would constitute *intrinsic* fraud, and such fraud cannot be raised after the expiration of the term in which the decree was entered. *McLaughlin v. McLaughlin,* 199 Pa. Superior Ct. 53, 184 A. 2d 130 (1962); *McFadden v. McFadden,* 91 Pa. Superior Ct. 301, 306 (1927); *Zettlemoyer v. Zettlemoyer,* 79 Pa. Superior Ct. 405, 408 (1922).

We might note, however, that the contention of Stamoula centers around the failure of Nicholas to testify concerning his return to Greece after he first came to this country in 1911. This was of no importance to the desertion, as the evidence shows that he again left Greece for this country in 1916, and that he sent Stamoula money in 1920 to join him here, and that she never came. She admitted receiving this money but said it was for sending the children to this country and not for her transportation. Neither of the children came to this country until after Nicholas had remarried in 1927. This testimony, along with the other testimony upon which the court below relied, is not sufficient to establish that the divorce was improperly granted. Furthermore, most of Stamoula's testimony should not have been admitted under the Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322.

The proceeding to open a decree of divorce is equitable in nature, and must be based on equitable considerations.

Margaret lived with Nicholas from June 2, 1927 to October 16, 1961, the date of his death. She bore him three children, including the one that was dead at birth. She performed all the duties of a wife, including assisting him in his business, and during the

last years caring for him in illness. Any reasonable attorney advising her in June of 1927, would have concluded that Nicholas was legally divorced, and able to legally marry her, which he did. Margaret was an innocent party, and must be given the equitable consideration she deserves. If we were to ignore Stamoula's delay in bringing the action to set aside the divorce decree and the many years of indifference to her husband, she also might be classified as an "innocent party". But she never came to this country until June 3, 1963, when she came to set aside the divorce decree and collect from his estate. She performed no wifely duties for many years. Here, as in *McLaughlin v. McLaughlin*, supra, 199 Pa. Superior Ct. 53, 184 A. 2d 130 (1962), the defrauding party, if any, is beyond the reach of the court, which must decide between these two "wives".

The court below concluded that Margaret participated in the fraud. It based this conclusion on two circumstances. In the application for a marriage license, Nicholas answered a question about previous marriages by stating "none". The application for the marriage license contains a "Statement of Male" which was signed by "Nick Contakos" and a "Statement of Female" which was signed by Margaret Shiffman. The incorrect answer was in the Statement of Male not in the Statement of Female signed by Margaret. How this could make her a participant in any possible fraud in obtaining the divorce decree is beyond our conception. In the second place, the court below concluded that Margaret's relationship with Nicholas was meretricious from its inception. This is based entirely upon the evidence that she gave birth to a stillborn child seven months after they were married. The sole fact that a child was born seven months after the marriage would be insufficient under any circumstances to establish that a meretricious relationship existed between the

parties, but particularly is it insufficient when the baby was stillborn and no evidence of its prenatal development was introduced.

The court below said, "There is some basis in the record for a finding that Stavroula was guilty of laches." There was testimony, including her own, that she knew Nicholas had a "woman" in this country. She made no effort to contact her husband—she was illiterate—but she certainly knew persons who could have written to him, and she saw her children several times after she had information that Nicholas had a "woman" in this country and had children to her.

In *Magistro v. Magistro,* 182 Pa. Superior Ct. 487, 491, 127 A. 2d 758 (1956), we said: "When the defendant in a divorce case delays bringing an action to set aside the decree until after the death of the plaintiff years later, it is a matter which may be given serious consideration by the court in determining whether, in the proper exercise of its equitable powers, it should open the decree." Further, failure to act in any manner to protect her marital rights for almost twenty-five years after she learned of his "woman," and for over thirty years since she last saw him, indicate that she did not consider her marriage to have much substance. Stamoula was "married" to Nicholas for many years without accepting any of the duties of such relationship. Her almost immediate action after the probate of Nicholas' will, initiated by their son James who admittedly was dissatisfied with its provisions, indicates to us that she has been aroused to activity for the sole purpose of obtaining funds from his estate. To set aside this decree, under such facts, would seriously undermine the validity of divorces without accomplishing any countervailing equitable purpose in this case. *Quinn v. Quinn,* 125 Pa. Superior Ct. 359, 367, 189 A. 705 (1937); *Magistro v. Magistro,* supra.

In his 1925 divorce action, Nicholas gave "Stamoula" as his wife's name. In her deposition taken June 3, 1963, she testified that her name was "Stavroula", and she had never been known as "Stamoula". Her counsel urges that the bringing of the action against "Stamoula" rather than "Stavroula" constitutes evidence of fraud by Nicholas. It was brought out in depositions that Nicholas Contakos in his Naturalization Petition filed in 1921 gave his own name as "Kontakos" and his wife's as Stanisula Kontakos. There undoubtedly were language problems involved throughout this case. The examples of it are too numerous to relate. Without belaboring the point, we hold that the misnomer here involved under these circumstances is irrelevant.

Order reversed, costs to be paid by the estate of Nicholas Contakos.

MONTGOMERY, J., would affirm on the opinion of Honorable J. FRANK MCKENNA, JR., for the court below.