## Eyler v. Eyler

*Keith Quigley*, for plaintiff.
*John Broujos*, for defendant.

WEIDNER, J., November 20, 1974.—A decree in divorce in this action filed by Owen v. Vera Eyler was entered October 1, 1969. This petition was filed by defendant in the action, to vacate or to open the decree because it was obtained by fraud.

This case may not be considered as a petition to vacate, since this court lacks the power to set aside a decree where no defect is apparent on the face of the record: Tanis v. Tanis, 206 Pa. Superior Ct., 213

(1965). Where new evidence — here, the charge of fraud, is introduced to sustain the attack, the petition should be one to open: Id. A petition to open in divorce proceedings is of an equitable nature, and thus ruled by equitable principles. The truthfulness of the indignity charge, as based on perjured testimony and false evidence, constitutes nothing more than intrinsic fraud, which must be raised before expiration of the term in which the decree was entered: McLaughlin v. McLaughlin, 199 Pa. Superior Ct. 53 (1962). A decree after the expiration of the term in which the decree was granted, may be opened only upon the showing of extrinsic fraud, i.e., conduct by the prevailing party which has prevented a fair submission of the controversy: Tanis v. Tanis, supra.

The record in the instant case indicates that a divorce decree was granted (to Owen and Vera Eyler), on grounds of indignities, on October 1, 1969, and the instant petition was filed September 14, 1972. Petitioner claims that the complaint in divorce was filed by the husband in order to induce the daughter, by a previous marriage, to remove her name from some property held in both names. Petitioner alleges that respondent stated that if the property was sold prior to the granting of the divorce, the proceedings would terminate. Petitioner states that she did not contest the divorce, relying on this promise and on his statement that, if the divorce did go through, he would remarry her. Petitioner states that she did not contact an attorney because respondent threatened her if she did try to contact counsel. Following the divorce decree, petitioner and respondent continued to cohabit and live together as husband and wife at intervals, take trips together, look for a new home and discuss remarriage. Sale of another property was used to delay a date of remarriage. Petitioner left respondent

when this action was filed, almost three years after the divorce decree was granted.

Decrees have been opened where the party was not notified of the proceedings or was convinced that they had been abandoned (D'Alessandro v. D'Alessandro, 48 Wash. 86 (1967), and Agnew v. Agnew, 91 Pitts. L. J. 376 (1943)), but such is not the case in this proceeding. In the instant case, petitioner had notice of all events regarding the divorce proceedings as verified by certified mail receipts, conversations and other testimony, The only circumstances of which she was unaware was respondent's intentions. She merely made no defense and did not appear at the hearing. She voluntarily stayed away from the action, although she claims respondent threatened her and warned her to stay away. If the threats did, in fact, take place, then any charge of fraud regarding respondent's intentions seems to lose validity. Petitioner alleges that respondent stated that if she discussed the matter with his attorney he definitely would not stay married to her. However, it is to be noted that, had she contacted counsel and contested the divorce on the grounds that no indignities or other grounds existed, then there would have been no divorce and she would have remained married to him as she now desires. The decree was granted and for almost three years no petition to open was filed, although petitioner was aware of all events, including respondent's desire to sell another property, a seemingly patent indication of the lack of his serious intent regarding remarriage. It was petitioner's continued lack of perception rather than respondent's deception which prevented petitioner from taking affirmative action to contest the decree. This court cannot pardon Mrs. Eyler for ignoring the facts of the situation and the doctrine of laches is, therefore, applicable.

The doctrine of laches comes into play when a party's motion is made at an unreasonably late date. An application to open a divorce proceeding must be made within term time except in extraordinary equitable circumstances: Buncher v. Buncher, 207 Pa. Superior Ct. 322 (1966). The circumstances as appear here, are that petitioner and respondent agreed to commence a divorce proceeding and even to complete it in order to get respondent's daughter to convey property. Such an agreement is collusive. Petitioner was aware of this, stating that if respondent's attorney knew of the circumstances surrounding the divorce, he wouldn't want to be a party to it. The court in Tanis v. Tanis, supra, states that petitioner in an equitable proceeding of this nature must come into court with clean hands. The term collusion implies an agreement to which both parties were necessarily a party, and she, therefore, is in no position to seek equitable relief: Miltimore v. Miltimore, 40 Pa. 151 (1861).

The petitioner here had the burden of overcoming the presumption of the validity of the divorce decree: Williams v. North Carolina, 325 U. S. 226, 234 (1945). She has failed to show that, in spite of her involvement in obtaining the decree, that the balancing of the equities requires an opening of the decree. Petitioner has established no position on which to justify equitable relief, and the petition to open must, therefore, be denied.

## ORDER OF COURT

And now, November 20, 1974, for the reason set forth in the foregoing opinion, it is ordered and directed that the petition to vacate and to open must be, and is, overruled and dismissed.