502 A.2d 185

**William C. FENSTERMAKER, Appellant,**

v.

**Anna Lue A. FENSTERMAKER.**

Superior Court of Pennsylvania.

Argued May 22, 1985.

Filed Nov. 8, 1985.

Reargument Denied Jan. 16, 1986.

238

Marc S. Fisher, Easton, for appellant.

Michael P. Shay, Bethlehem, for appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

On February 20, 1981, a divorce was granted to the parties to this action. On July 25, 1983, appellee filed a petition to amend the divorce decree. Appellee's petition was granted. On November 20, 1984, the trial court ordered that the petition be treated as a petition to open the divorce decree for purposes of amending the divorce decree. The court retained jurisdiction over the ancillary economic claims. Appellant asks this Court to find that the divorce

decree should not be opened. He raises two claims for consideration in support of his position.

(1) The lower court erred in treating and granting appellee's petition to amend the divorce decree as a petition to open where no order of bifurcation was entered.

(2) The lower court erred in treating and granting appellee's petition to amend the divorce decree as a petition to open where the petition was filed two and one-half years after the entry of a decree in divorce in the absence of establishing fraud.

We find that the trial court erred, not in exercising its equitable power, pursuant to the power vested in it by the Divorce Code, 23 P.S. § 401(c), but in electing to treat the petition to amend the divorce decree as a petition to open, rather than as a petition to vacate the divorce decree. We therefore modify the trial court's order to correct this error and affirm. *See* 42 Pa.C.S. § 706.

In the instant case the parties were both represented by counsel at all stages of the proceedings. Counsel for the parties had attempted to resolve the marital property issues prior to the entry of the divorce decree. The record reveals that communication between the parties' respective attorneys continued during the period from August 12, 1980 until the entry of the divorce decree.

The intention of the appellant to continue negotiating a property settlement was clearly communicated to appellee on February 9, 1981, prior to the entry of the divorce decree. In response to a letter from appellee on December 23, 1980, counsel for appellant stated that he would make certain concessions. At the conclusion of the letter, appellant's counsel stated:

Very shortly we will be filing a motion asking the court to enter a Decree in Divorce under the provisions of Section 201(d) of the divorce code. Needless to say, that should not interfere with the other items prayed for in the divorce complaint, and if we cannot work it out, then, of course, a Master can be appointed for those purposes. However if we can owrk it all out, fine. I will send you a

letter giving you five day's notice of the date that I will be presenting the motion for the granting of the divorce, which notice would be given pursuant to the rules of procedure in Lehigh County.

Relying on the pattern of continous negotiation prior to the entry of the decree in divorce, appellee did not file exceptions nor take any appeal from the divorce decree.

A conference was held on March 27, 1981, at which time the parties were under the impression that an agreement had in fact been reached. However, a dispute subsequently arose and no agreement was reached. Appellant thereafter ceased negotiating with appellee.

On July 25, 1983 appellee filed a petition to amend the divorce decree, in order that the court could resolve the issues of equitable distribution, alimony, counsel fees and costs. The trial court resolved the economic issues, thereby rejecting appellant's argument that appellee had waived all claims pursuant to Pa.R.C.P. 1920.31(c)[1] and 23 P.S. § 401(j).[2]

In the opinion of the Honorable James Knoll Gardner, the trial court opined:

At first blush husband's argument seems to have merit. However, a close reading of the act discloses that the

1. **Rule 1920.31. Joinder of Related Claims. Child Support. Alimony. Alimony Pendente Lite. Counsel Fees. Expenses.**

   (c) The failure to claim alimony, alimony pendente lite or counsel fees and expenses prior to the entry of a final decree of divorce or annulment shall be deemed a waiver thereof unless the court expressly provides otherwise in its decree. The failure to claim child support shall not bar a separate and subsequent action therefor.

2. **23 P.S. § 401(j):**

   Whenever a decree or judgment is granted which nullifies or absolutely terminates the bonds of matrimony, any and all property rights which are dependent upon such marital relation, save those which are vested rights, are terminated unless the court otherwise expressly provides in its decree in accordance with subsection (b). All duties, rights, and claims accruing to either of said parties at any time heretofore in pursuance of the said marriage, shall cease and the parties shall, severally, be at liberty to marry again in like manner as if they had never been married, except where otherwise provided by law.

equitable powers of the court survive the entry of the Divorce Decree. Section 401(c) grants the court power to issue orders "which are necessary ... to effectuate the purposes of this act ..." Section 102 of the Divorce Code provides:

(a) ... it is hereby declared to be the policy of the Commonwealth of Pennsylvania to: ...

(6) Effectuate economic justice between parties who are *divorced* or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

(b) The objectives set forth in subsection (a) shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent. (Emphasis added).

If the purposses of the act include effectuating economic justice concerning property rights and alimony between divorced parties, the equitable powers given to the court to effectuate these purposes must survive the divorce decree.

Appellant contends that the trial court erred in treating and granting appellee's petition to amend the divorce decree as a petition to open. We will address this issue first as it is dispositive of the present appeal.

The Divorce Code confers on the courts broad equitable power in the interests of justice in matrimonial cases. The Code specifically provides:

In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue ... orders which are necessary to protect the interests of the parties or to effectuate the purposes of this Act, and may grant such other relief or remedy as equity and justice require against either party ...

23 P.S. § 401(c).

Section 401(c) is identical with Section 601(2) of the Joint State Government Commission (JSGC) report issued in

June, 1961, recommending a new Marriage and Divorce Code. § 601(2) was

> [i]ntended to give emphasis to the equity power and jurisdiction of the court and to make sure that it has effective power to deal with *any problem* which arises during the course of litigation, even if a third party is involved.

JSCG Comment, at 121, quoted in Jack A. Rounick, *Pennsylvania Matrimonial Practice*, § 18.6 (1982) (emphasis supplied). It is clear that § 401(c) "gives the courts below power to ... effectuate the purposes of the Divorce Code, one of which was to give divorced persons economic justice." *Lazovitz v. Lazovitz*, 307 Pa.Super. 341, 351–352, 453 A.2d 615, 620 (1982). *See also Mayhue v. Mayhue*, 336 Pa.Super. 188, 485 A.2d 494 (1984).

The procedure for the exercise of this equitable power was explicitly provided for by the drafters of the Divorce Code. 23 P.S. § 602 provides:

> **Opening or vacating divorce decrees**
>
> A motion to open a decree of divorce or annulment may be made only within 30 days after entry of the decree and not thereafter. Such motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or because of a fatal defect apparent upon the face of the record, must be made within five years after entry of the final decree. Intrinsic fraud is such as relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

The section places limitations in terms of the time period in which the divorce decree can be opened or vacated. For a petition to open, the motion must be made within thirty

days for *intrinsic fraud* or new evidence.   For a motion to vacate, the petition must be filed within five years where the attack is based on *extrinsic fraud,* lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record.

The distinction between extrinsic fraud, *i.e.,* fraud which relates to a collateral matter a consequence of which is to prevent a fair hearing, and intrinsic fraud, *i.e.,* a matter relating to the adjudication of the judgment, was defined by the court in *McEvoy v. Quaker City Cab Co.,* 267 Pa. 527, 536, 110 A. 366, 368 (1920):

> By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy.   Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action.   Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest.   The fraud in such case is extrinsic or collateral to the question determined by the court.   The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: *Pico v. Cohn,* 91 Cal. 129.   Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial. *Bleakley v. Barclay,* 75 Kansas 462.

*Accord, McFadden v. McFadden,* 91 Pa.Super. 301 (1927); *Powell v. Doyle,* 77 Pa.Super. 520 (1921).   Compare the following cases, all of which were decided prior to the

effectiveness of 23 P.S. § 602: *Roach v. Roach,* 275 Pa.Super. 320, 418 A.2d 742 (1980) (The Court recognized the equitable nature of a petition to open a divorce decree in circumstances where neither appellee nor her attorney were present at the hearing. Moreover, the record indicated that notice of the filing of the Master's report was sent only to appellee at a Georgia address where the complaint had been served and returned, marked "unknown." The Court exercised its equitable power to open the divorce decree, reasoning that appellee's lack of notice invalidated any claim that she "waited too long to file her petition to open the decree."); *Teriberry v. Teriberry,* 210 Pa.Super. 54, 232 A.2d 201 (1967) (The Court opened a divorce decree to afford the wife an opportunity to present her case. The wife had requested a continuance, because her attorney was unable to appear, pursuant to her attorney's instruction to her. She was under the impression that a further hearing date would be scheduled. The Court exercised its equitable power to open the case for "the wife is entitled to her day in court".); *Buchner v. Buchner,* 207 Pa.Super. 322, 217 A.2d 861 (1966) (The Court noted the difference between a petition to open a divorce decree and a petition to vacate; namely, the former must be within "term time" while the latter within a reasonable time after knowledge.); *Tanis v. Tanis,* 206 Pa.Super. 213, 217, 213 A.2d 102, 105 (1965) (The Court held that a petition to open a divorce decree should only be granted "on the grounds of extrinsic fraud, which means conduct by the prevailing party which has prevented a fair submission of the controversy".); *Contakos v. Contakos,* 204 Pa.Super. 445, 450, 205 A.2d 619, 621 (1965) (In a petition to open a divorce decree, intrinsic fraud cannot be raised "after the expiration of the term in which the decree was entered." Quotations omitted); *McLaughlin v. McLaughlin,* 199 Pa.Super. 53, 56, 184 A.2d 130, 132 (1962) ("[I]t is well settled that a divorce decree can be vacated or stricken off only for a defect apparent on the face of the record. Where new evidence relating to the cause of action must be introduced in order to sustain the attack, the decree should not be vacated or set aside but should be

opened." (quotations omitted)); *Blair v. Blair,* 195 Pa.Super. 406, 171 A.2d 854 (1961) (The Court recognized the equitable nature of a petition to open a divorce decree but declined to do so in that appellant had been afforded notice of the decree and had an opportunity to enter a defense.); *Wisecup v. Wisecup,* 190 Pa.Super. 384, 391, 154 A.2d 332, 335 (1959) (The Court declined to open the decree in divorce, finding that appellant failed to show "extrinsic fraud promptly complained of after its discovery".); *Magistro v. Magistro,* 182 Pa.Super. 487, 127 A.2d 758 (1956) (The Court refused to open a divorce decree after eight years and the death of the husband.); *Wisor v. Wisor,* 175 Pa.Super. 233, 239, 103 A.2d 498, 501 (1954) (The Court enunciated the distinction between a petition to vacate and a petition to open. "The former are based on fatal defects apparent on the face of the record, while petitions to open concern other matters associated with the decree or judgment, or those upon which the decree or judgment is based, in other words, the merits of the controversy ending in final judgment."); *Knode v. Knode,* 159 Pa.Super. 210, 48 A.2d 151 (1946) (The Court stated it would not grant a petition to open which was untimely and in the absence of fraud on the respondent.). *See also,* Foster, *Domestic Relations,* 22 U. Pitts.L.Rev. 313 (1960).

Addressing this issue in *Aloi v. Aloi,* 299 Pa.Super. 400, 445 A.2d 815 (1982), the Court did not find an abuse of discretion by the trial court in refusing to re-open the Master's hearing. The trial court reasoned that although the appellant had petitioned for a continuance which had been denied, in light of counsel's failure either to appear before the Master or send a replacement, appellant proceeded at her peril by failing to attend the Master's hearing. The essential element was that both appellant and counsel had been notified of the hearing. But *see Roach v. Roach, supra, Deussing v. Deussing,* 224 Pa.Super. 525, 307 A.2d 382 (1973), and *Teriberry v. Teriberry, supra,* where the petitioner had not been afforded a day in court. Where both parties had notice of the proceeding, albeit appellant

chose not to appear, alleged insufficiency of the evidence will not be considered as extrinsic fraud. *Buchner v. Buchner,* 207 Pa.Super. 322, 217 A.2d 861 (1966).

A party to a collusive agreement cannot be found to have any justification for either opening or vacating a divorce decree, showing neither intrinsic nor extrinsic fraud. We hold that "[t]he term collusion implies an agreement to which the husband is necessarily a party, and he is therefore in no position to seek equitable relief." *Tanis v. Tanis,* 206 Pa.Super. 213, 218, 213 A.2d 102, 105 (1965). Extrinsic fraud has been found where a party assumes a residence merely in order to meet jurisdictional requirements. *McLaughlin v. McLaughlin,* 199 Pa.Super. 53, 184 A.2d 130 (1962), quoting *Wisor v. Wisor,* 175 Pa.Super. 233, 103 A.2d 498 (1954), and *Cortese v. Cortese,* 163 Pa.Super. 553, 63 A.2d 420 (1949). The Court in *McLaughlin,* however, noted that

> [i]f an unsuccessful party to an action has been prevented from presenting his case by fraud or deception practiced on him by his opponent, as by keeping him in ignorance of the proceeding, an order to set aside the decree and open the case for a new and fair hearing should be affirmed.

*Id.,* 199 Pa.Superior Ct. at 57, 184 A.2d at 132 (quotations omitted).

In *Beamer v. Beamer,* 330 Pa.Super. 154, 479 A.2d 485 (1984), the Court distinguished the case where one party was precluded from raising an issue due to the "fraudulent" representation of the other, from the situation where a party seeks to "relitigate" an issue after both parties to the action have been afforded a day in court. The Court declined to find intrinsic fraud sufficient to warrant opening a divorce decree where the petition required a *"redistribution"* of the true value of the real estate previously valued and equitably distributed by the court.

The property in issue in *Beamer* had been destroyed by fire subsequent to the entry of the divorce decree. Appellant had the premises insured for a greater value than the

value determined by the Master. The insurance policy was in the name of the appellee only.

> Both parties, appellant's witness, and appellant's trial counsel all testified that the focus of the Master's hearing was whether the real estate was marital property. Appellant did not except to the amount of her distribution, which leads us to believe that she was satisfied with that amount. Had it not been for the fire and the resulting realization that the real estate was insured for $20,000 more than the court-determined value of the property, appellant would probably have never questioned the amount of the distribution.

*Id.*, 330 Pa.Superior Ct. at 164, 479 A.2d at 490.

However, the appellant had permitted her personal property to remain in the marital home, at appellee's request, to facilitate the sale of the property. The personal property was destroyed in the fire. The Court still declined to find "that opening the divorce decree is the correct solution to appellant's personal property problems." *Id.*, 330 Pa.Superior Ct. at 160, 479 A.2d at 488. Instead, exercising its broad equitable powers, the Court imposed "a constructive trust on the insurance proceeds representing appellant's interest in those proceeds ..." *Id.* Appellant argued in *Beamer* that the court should exercise its equitable power to open the divorce decree to redistribute the marital property award. The Court rejected this view based on its holding that the parties had *effectively* litigated the issue.

Given the issue raised by appellant, it is both significant and determinative that the prior case law speaks in terms of granting a petition to open a divorce decree on the grounds of extrinsic fraud; whereas a petition to vacate should be granted for intrinsic fraud. The Divorce Code reverses the grounds for relief, namely, a petition to open is to be granted if there is intrinsic fraud; whereas a petition to vacate is granted for extrinsic fraud. 23 P.S. § 602. Guided by prior case law, the trial court amended the appellee's petition to read as a petition to open the divorce decree.

The Divorce Code requires the modification to a petition to vacate due to the substantive reversal of the criteria for petitions to open and vacate decrees.

■ In light of the continued representations to appellee evidencing his "intention" to finalize their property settlement, the court did not err in finding extrinsic fraud upon which a petition to vacate the decree could be granted. Appellee did not have the opportunity to litigate these economic claims. The court exercised its equitable power to effectuate economic justice. 23 P.S. § 401(c).

Appellant raises a second claim of alleged trial court error. Appellant argues that the court erred in treating and granting appellee's petition to amend the divorce decree as a petition to open where no order of bifurcation was entered.

■ Appellant's argument tacitly assumes that the court cannot exercise its equitable powers to open or vacate a divorce decree without simultaneously entering an order for bifurcation, or alternatively that an order to open or vacate a divorce decree is also an order for bifurcation. This is procedurally incorrect. A petition to open a divorce decree or to vacate a divorce decree does not presuppose an order for bifurcation, nor is its propriety evaluated on the basis of the same criteria.

The procedural requirements of a motion to open or vacate a divorce decree are addressed by statute at 23 P.S. § 602; the propriety of severance of divorce and economic claims is controlled by 23 P.S. § 401(b).

The trial court's order stated:

AND NOW, February 20, 1981, the Court enters a Decree in Divorce, divorcing and separating the Plaintiff, William C. Fenstermaker, from the bounds of matrimony heretofore contracted with the Defendant, Anna Lue Fenstermaker, pursuant to Section 201(c) of the Divorce Code.

IT IS FURTHER ORDERED that the court retains jurisdiction of the following claims for which a final Order has not yet been entered: alimony, alimony pendente lite, equitable distribution of marital property, counsel fees and costs.

The appellant contends that the court had simultaneously opened the divorce decree and bifurcated the economic claims from the divorce claims.

It is well established that the Divorce Code *permits* the severance of divorce claims from economic claims.

Any decree granting a divorce or an annulment, shall include after a full hearing, where these matters are raised in the complaint, the answer or other petition, an order or orders determining and disposing of existing property rights and interests between the parties, custody and visitation rights, child support, alimony and any other related matters including the enforcement of the rights of any party to any such matters, the court shall have all necessary powers, including but not limited to, the power of contempt and the power to attach wages. In the event that the court is unable for any reason to determine and dispose of the matters provided for in this subsection within 30 days after the master's report has been filed, it may enter a decree of divorce or annulment. The court may order alimony, reasonable counsel fees and expenses pending final disposition of the matters provided for in this subsection and upon final disposition, the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equitably as it shall appear just and reasonable.

23 P.S. § 401(b).

Moreover, the Pennsylvania Rules of Civil Procedure provide the court with discretion and latitude in dealing with the economic aspects of the divorce proceeding. "The court need not determine all claims at one time but *may*

enter a decree adjudicating a specific claim or claims." Pa.R.C.P. 1920.52(c). (Emphasis supplied).

The trial court has the discretion to sever the economic claims from the divorce claims. In *Wolk v. Wolk*, 318 Pa.Super. 311, 315, 464 A.2d 1359, 1361, (1983) (Opinion by Cirillo, J.) (footnote omitted), we explained the rationale underlying the provision for bifurcation in the Divorce Code.

It is apparent that a speedy resolution of the divorce issue is within the purview of the Code. Moreover, as the Honorable Eugene B. Strassburger III of the Court of Common Pleas of Allegheny County commented in the case of *Casey v. Casey*, 129 P.L.J. 42, 44 (1981):

... [T]hese goals [of the divorce code] can be accomplished only by the prompt dissolution of a marriage that is demonstrably over (as defined by the code), and allowing the parties to restructure their lives. The goals cannot be accomplished by tying the parties to a dead marriage while all of the conflicts and time-consuming financial details are litigated....

Bifurcation separates the termination of the marriage from the distribution of property so that the marriage and each party's personal life are not held hostage to economic demands. At the same time, the dependent spouse is not economically disadvantaged by the fact of the divorce being issued because support and/or alimony pendente lite are required to continue at their pre-divorce levels pending resolution of the economic matters. *Klein v. Klein*, 16 D & C 3d 651 (1980) (footnote omitted).

As the court noted in *Mandia v. Mandia*, 341 Pa.Super. 116, 491 A.2d 177 (1985), procedural missteps are readily conceivable. For example, in *Mandia*, the party attempted to appeal the bifurcation order. The Court clarified the proper procedure for appellant, namely to "appeal the order granting the divorce, premised as it is on the bifurcation order." *Id.*, 341 Pa.Superior Ct. at 119, 491 A.2d at 179.

To infer the existence of an order to bifurcate in the instant case would be a "procedural misstep."

■ Bifurcation is not effectuated incidentally by granting either a petition to open or vacate a divorce decree but rather decisionally. The trial court is required, pursuant to a request by a party to bifurcate, to carefully study the case before him and evaluate the advantages and disadvantages of bifurcation on a case-by-case basis. *Wolk, supra.* The trial judge must review the facts of the case and not make a *pro forma* decision to bifurcate. *Wolk, supra; see also Hall v. Hall,* 333 Pa. Super. 483, 482 A.2d 974 (1984).

In the case at bar, there was no decision to bifurcate. The factors weighing in favor of bifurcation, namely, speedy resolution of the divorce issue, continuation of support and/or alimony pendente lite during the pendency of the resolution of economic claims, tax advantages and encouragement of settlement of property issues, *Wolk, supra,* were rendered moot by the passage of time between the entry of the divorce decree and the issuance of the order which is the subject of this appeal. The court could not effectuate the goals of bifurcation at this point in time. Thus, the court noted the order merely had the "effect of bifurcation."

In the instant case, appellant is not appealing from an order granting a divorce, premised on a bifurcation order. Bifurcation was not ordered in this case. As a consequence of bifurcation, a party *can* sever economic claims from a divorce decree, *requesting bifurcation* of these disparate issues. In the case, *sub judice,* appellee neither addressed the issue of economic rights to the court nor requested bifurcation of the economic claims from the divorce. The court, therefore, exercised its equitable powers to effectuate economic justice, pursuant to the Divorce Code, 23 P.S. § 401(c), and its power under 23 P.S. § 602 to effectuate distribution of these claims.

Order modified to treat appellee's petition as a petition to vacate the divorce decree, otherwise affirmed.