**Strouse v. Strouse**

*Dianne Dickson,* for plaintiff.
*Gary F. Dobias,* for defendant.

LAVELLE, *P.J.,* March 13, 1986—We have before us the several petitions of defendant Carol A. Strouse to open or vacate a decree of divorce granted to her plaintiff-husband, for reconsideration of

our decree granting the divorce, and to strike plaintiff's discontinuance of his claim for equitable distribution.

Plaintiff Franklin H. Strouse filed answers to all petitions and an evidentiary hearing was held on December 4, 1985. The parties have submitted their briefs, oral argument has been held, and the matter is now ready for disposition.

## FACTS OF THE CASE

The credible facts of the case, as we find from the evidentiary hearing and as disclosed by the record, reveal the following:

On July 1, 1985, Mr. Strouse commenced the present action for divorce under section 201(d) of the Divorce Code, 23 P.S. §201(d), and included counts for equitable distribution and custody of the parties' children. The complaint and 201(d) affidavit were served on Mrs. Strouse on July 11, 1985 by registered mail.

On August 1, 1985, the 21st day after service of the complaint and 201(d) affidavit, Mr. Strouse's counsel sent a letter to the prothonotary, copied by certified mail to Mrs. Strouse and received by her on Friday, August 2, 1985, which provided in pertinent part: "Enclosed herein please find for filing a praecipe to withdraw to [sic] counts filed by the plaintiff in the above-referenced divorce action." A copy of the praecipe was also enclosed with the letter. The praecipe instructs the prothonotary to "withdraw and discontinue the prayers for relief contained in Count II (Custody) and Count III (Equitable Distribution) of the above-referenced divorce action."

The following Monday, August 5, 1985, plaintiff's attorney mailed a praecipe to transmit the record, not copied to Mrs. Strouse, which was received and filed on August 6, 1985. The prothonotary duly

transmitted the record to the court and a divorce was granted on August 8, 1985. Mrs. Strouse was not notified that the divorce had been granted until August 13, 1985.

While this procedural scenario was unfolding, Mrs. Strouse undertook the following actions: After service of the complaint, she contacted her attorney and made an appointment for July 25, 1985. At the meeting with her attorney, she gave him the complaint and it was agreed that, in addition to the equitable distribution claim already at issue, Mrs. Strouse would seek alimony and counsel fees.

Her attorney, William E. McDonald, Esq., neither entered his appearance nor contacted opposing counsel. Instead, he prepared Mrs. Strouse's answer to the complaint and attempted to telephone her to sign the complaint's verification on August 2, 1985. However, her telephone had been disconnected for nonpayment of bills. Over the course of the next several days, Mrs. Strouse and her attorney attempted to communicate via a neighbor's telephone. They finally made contact on August 8, 1985, the date the divorce decree was entered.

Mrs. Strouse resides in Effort, Monroe County, which is a considerable distance from the situs of this action and her attorney's office. She is employed and has custody of the parties' two minor children.

In the August 8, 1985 telephone conversation, Mrs. Strouse advised her attorney of the August 1, 1985 letter. Mrs. Strouse testified that she did not understand the significance of it; that she believed that she would have to be notified by her husband before any divorce was entered.

Following this telephone conversation, which occurred on a Thursday, attorney McDonald began making inquiry and learned on the following Mon-

day that the divorce decree had been entered. He then entered his appearance and promptly presented the instant petitions. (For reasons not apparent to us, the petition to strike off discontinuance was not filed until December 4, 1985, although our records indicate that it was presented to us along with the other petitions on August 20, 1985).

## DISCUSSION

Although Mrs. Strouse has filed a variety of petitions, we believe this case is properly governed by §602 of the Divorce Code, 23 P.S. §602, which sets forth the requirements for vacating or opening a final divorce decree.

The legislature has unequivocally stated that the grant of a divorce decree terminates all nonvested property rights dependent upon the marital relation, unless the court by its decree retains jurisdiction for their subsequent adjudication. 23 P.S. §401(j). The legislative caveat to this provision is found in §602, which provides the exclusive method for obtaining relief from a final decree. Because Mrs. Strouse seeks such relief, her claim falls within the parameters of §602. See Fenstermaker v. Fenstermaker, Pa. Super. , 502 A.2d 185 (1985).

Under §602, the court may *open* a divorce decree upon a showing of intrinsic fraud. The decree may be *vacated* upon a showing of extrinsic fraud. The distinction between the two types of fraud is set forth in §602:

"Intrinsic fraud is such as relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case." 23 P.S. §602.

In this case, we find no basis for a claim of intrinsic fraud. There is no evidence that Mr. Strouse falsified any of the documents used to obtain his divorce. Further, he complied with the strict letter of the Pennsylvania Rules of Civil Procedure governing divorces.

On the other hand, we do find extrinsic fraud of sufficient magnitude to warrant the grant of equitable relief to Mrs. Strouse.

Mr. Strouse clearly took advantage of what we perceive to be a procedural flaw in the divorce rules governing 201(d) actions which permits the entry of a unilateral, no-fault divorce without adequate notice to the other spouse. Pa.R.C.P. 1920.1 et seq.

In a 201(c) divorce action, both parties must execute an affidavit acknowledging, inter alia, that they may lose their marital property rights if not asserted before the grant of the divorce. Pa.R.C.P. 1920.72. In a "fault" divorce action, the master is required to give each party written notice of both the hearing and the filing of his report. Pa.R.C.P. 1920.53.

Unlike these rules, there are no similar safeguards in the rules governing 201(d) divorces to ensure adequate notice to defendant when plaintiff files and serves the complaint and 201(d) affidavit simultaneously. Essentially, only one notice is given, as affixed to the complaint and included in the 201(d) affidavit. Twenty days after service of these documents, a plaintiff may, without further notice, praecipe to transmit the record and, if there are no outstanding issues, a divorce will be granted. See Pa.R.C.P. 1920.42(a)(2), 1920.72(c), 1920.73.

In this respect, we think that the entry of a 201(d) divorce at the expiration of the 20-day period after service of the complaint and affidavit is analogous to the entry of a "snap" judgment. "Snap judgments"

in civil actions have long been condemned by our appellate courts. Silverman v. Polis, 230 Pa. Super. 366, 326 A.2d 452 (1974); Brooks v. Surman Dental Lab, Inc., 262 Pa. Super. 369, 396 A.2d 799 (1977). To remedy the problem of snap judgments, Pennsylvania Rule of Civil Procedure 237.1 was adopted, requiring a 10-day notice of an intent to take a default judgment.

The interest of a defendant in a divorce action is certainly of no less magnitude than that of a defendant in a civil action for damages. We have great difficulty conceptualizing why a plaintiff in a divorce action should be permitted to secure a divorce, cutting off all marital property rights of the spouse, in less than 30 days without any secondary notice, when a plaintiff in a civil action must wait at least 30 days and is required to give 10 days' written notice of the intent to default[1]. Pa.R.C.P. 237.1.

Under the circumstances of this case, we find that the notice given to Mrs. Strouse of her spouse's intended action was wholly inadequate. We credit Mrs. Strouse's testimony that she did not understand the significance of the copy of the letter she received on August 2, 1985 and that she believed her husband would have to give her notice before obtaining the decree.

Mr. Strouse's argument that the August 1, 1985 letter provided adequate notice is unpersuasive. The letter and praecipe do not anywhere indicate an intent to enter a divorce decree. We do not hold Mrs. Strouse, a layperson, accountable for failing to com-

---

1. By local rule, not in effect at the time the divorce was granted in this case, the moving party is now required to serve notice of intent to transmit the record for entry of a divorce decree at least 10 days prior to filing of the praecipe. Carbon Co. R.C.P. 1908.

prehend the meaning of a "praecipe" and a "withdrawal of prayers for relief," much less the implicit legal ramifications of the filing of that praecipe, which only an attorney could be expected to divine. By the time Mrs. Strouse's attorney learned of the letter, only six days later, it was too late to take curative action because the divorce decree was entered on that date.

The letter of August 1, 1985 appears to give notice, but actually does not tell Mrs. Strouse that her husband is putting himself in a position to obtain a divorce decree. We accept her testimony as credible that she did not understand that the withdrawal of the ancillary counts would enable her husband to proceed with the divorce.

In light of the fact that his counsel did not serve a copy of the praecipe to transmit the record upon Mrs. Strouse — which plainly states, "transmit the record, together with the following information, to the court for entry of a Divorce Decree" — and the extremely short period of time between the service of the letter and the filing of the praecipe to transmit (four days, including a weekend), we think the conclusion inescapable that Mr. Strouse was doing his level best to defeat his wife's right of equitable distribution by rushing through the divorce before she had time to understand the reason for his actions.

It is obvious to this court that the rapidity of plaintiff's processing of the formalities of the divorce — and his 11th hour withdrawal of his counts for equitable distribution and custody — were prompted by nothing other than a conscious intent to cut off his wife's right to equitable distribution.

We found unworthy of belief Mr. Strouse's explanation given at the hearing that the reason he withdrew his ancillary counts was to accommodate his wife's request "to get it over with." Mr. Strouse ad-

mitted two telling facts which revealed his true motivation: (1) He was aware before entry of the decree that he had two substantial pension funds which would be deemed marital property subject to equitable distribution; and (2) he was also aware that the grant of the decree would terminate his wife's rights in the pension funds because they were not joint property subject to division with her in a post-divorce partition action.

Although Mr. Strouse equivocated in his testimony as to when he first learned that the pensions would not be partitionable, it was manifest at the hearing that his attorney, Dianne Dickson, Esq., knew that the divorce would terminate Mrs. Strouse's pension claims. Moreover, we believe that Mr. Strouse was aware that the divorce would destroy any pension claims of his wife prior to entry of the decree. His damaging admissions concerning the pension came on cross-examination.

We are unimpressed by his assumed cloak of ignorance. The combination of the swiftness of the proceedings, the admitted facts concerning the pensions, counsel's awareness of the effect of the withdrawal of the ancillary counts, and Mr. Strouse's vacillating testimony firmly convince us that he knew, before the divorce, that its entry would cut off his wife's marital property interests.

To deny relief here would be to embrace form over substance and, in our view, to flaunt both the spirit and the letter of the Divorce Code of 1980.

We conclude that Mr. Strouse procured his divorce without adequate notice to his wife or allowance of sufficient time for her to respond to protect her rights after withdrawal of his claim for equitable distribution. Finding, further, that Mr. Strouse knowingly undertook this course of action to defeat Mrs. Strouse's claim against his pension

funds and other marital property, we are satisfied that the record establishes an overreaching by plaintiff with the obvious consequence of having deprived Mrs. Strouse of a fair hearing on her claims for equitable distribution. 23 P.S. §602. Fenstermaker v. Fenstermaker, supra; Roch v. Roch, 275 Pa. Super. 320, 418 A.2d 742 (1980); Teriberry v. Teriberry, 210 Pa. Super. 54, 232 A.2d 201 (1967).

We note our strong disapproval and caution counsel against assisting a client in abusing valid procedural devices to achieve a grossly unjust result. Divorce is not a game of "one-upmanship." The statute and the rules are written to effect economic justice between the parties, not to be predatorily employed to rob a spouse of his or her lawful share of the marital assets. Such overreaching impacts not only upon the lifestyle of the deprived spouse, but upon the children in that spouse's custody who undoubtedly share in the effects of that parent's straightened economic circumstances and who will be the emotional victims of the added bitterness this conduct must generate between their parents.

## REMEDY

Mrs. Strouse does not request that the divorce be set aside. She seeks permission to assert claims of equitable distribution, alimony, counsel feels and costs.

In view of our findings, we will grant Mrs. Strouse the requested relief. Had adequate notice been given, we think it clear that Mrs. Strouse would have acted to protect all ancillary rights. Her claims were cut off by her spouse's precipitous action. Having been precluded from a fair hearing and presentation of her side of the case, 23 P.S. §602, we think Mrs. Strouse is entitled to assert her ancillary claims.

For the reasons set forth in this opinion, we enter the following

### ORDER AND DECREE

And now, this March 13, 1986, upon consideration of defendant's petitions to open or vacate the decree of divorce granted in this matter, to strike off the discontinuance of plaintiff's ancillary claims, and for reconsideration of the decree of divorce entered on August 8, 1985, it is hereby ordered, adjudged and decreed that:

1. The petition to vacate is granted and the decree of divorce entered on August 8, 1985 be and is hereby vacated; and

2. It is hereby ordered and decreed that Franklin H. Strouse, plaintiff, and Carol A. Strouse, defendant, are divorced from the bonds of matrimony.

The court retains jurisdiction of the parties' claims for equitable distribution, alimony, counsel fees and costs, which have been raised of record in this action and for which a final order has not been entered; and

3. Defendant's petition to stike off discontinuance is dismissed as moot; and

4. On reconsideration of the decree of divorce entered August 8, 1985, which was expressly granted by order of August 23, 1985, the grant of reconsideration is affirmed, the decree is vacated and replaced by this decree.