2018 PA Super 220

| BRUCE R. BARDINE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DONNA J. BARDINE | : | No. 1787 WDA 2016 |

Appeal from the Order Entered October 20, 2016
In the Court of Common Pleas of Blair County Civil Division at No(s):  2009 GN 4150

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION BY OLSON, J.:                    **FILED AUGUST 2, 2018**

Appellant, Bruce R. Bardine (Husband), appeals from an order entered on October 20, 2016 that granted a petition filed by Donna J. Bardine (Wife) to vacate the parties' divorce decree and modify their property settlement agreement.  We reverse.

Husband and Wife were married on September 4, 1976 and separated on June 20, 2009.  Husband filed a divorce complaint on November 5, 2009.  Thereafter, in August 2012, the parties appeared before a hearing master to divide their marital assets, including funds held in Husband's Kmart Corporation Employee Pension Plan (pension).  At the hearing, the parties agreed to equally divide the monthly payment benefit issued from Husband's pension and further agreed to incorporate this "equal division" term into their marital settlement agreement.  The record of the hearing contains no discussion of, or agreement to, a specific monetary sum that Husband or Wife expected to receive from the pension.  Wife later filed exceptions to the

hearing master's report and recommendation but did not raise an issue related to the pension. The trial court entered a final divorce decree on December 19, 2012. The decree incorporated the parties' marital settlement agreement, including their agreement to divide equally the monthly payment benefits issued from Husband's pension.

A Qualified Domestic Relations Order (QDRO) was subsequently prepared and executed by Wife, as an alternate payee, on October 29, 2013 and by Husband, as a participant, on November 20, 2013.[1] With the preparation of the QDRO, the parties learned that they each would receive a monthly payment of $480.52 from Husband's pension. *See* QDRO, 12/3/13, at 2. On November 14, 2013, Wife filed a petition for permanent alimony seeking an additional monthly payment of $314.50 from Husband. Wife claimed that, throughout the proceedings, Appellant misrepresented the anticipated monthly pension benefit as $788.05 and she came to rely on that sum in accepting the parties' marital settlement agreement. Lengthy negotiations aimed at resolving the parties' dispute ensued but, ultimately, proved unsuccessful. After a hearing, the trial court, on October 20, 2016, vacated the parties' divorce decree and modified their marital settlement agreement by directing Husband to pay Wife an additional $157.25 each

_____

[1] The trial judge entered the QDRO as an order of court on December 3, 2013.

month.[2] The court also determined that it retained continuing jurisdiction to conduct oversight and enforcement of the parties' marital settlement agreement because of Husband's alleged fraud and the parties' mutual mistake of fact. **See** Trial Court Opinion, 10/20/16, at 3; **see also** Trial Court Opinion, 6/30/17, at 2.

Husband filed a timely notice of appeal on November 21, 2016.[3] On May 17, 2017, the trial court directed Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband filed his concise statement on June 2, 2017 and the trial court issued a brief opinion on June 20, 2017.

Husband raises two issues in this appeal:

> Did the trial court commit reversible error in opening and modifying the [p]arties' [m]arital [s]ettlement [a]greement and opening the [f]inal [d]ivorce [d]ecree and [QDRO] when [Wife] failed to file a petition to open said final order within the thirty (30) day required time period under 23 Pa.C.S.A. § [3332]?

> Were the [trial c]ourt's findings offered in support of modifying and opening the [f]inal [d]ivorce [d]ecree, [m]arital settlement [a]greement, and [QDRO] insufficient and inadequate as a matter of law and were said findings supported by the record?

---

[2] The trial court reasoned that Wife was entitled to an additional monthly payment of $157.25 because that sum equaled approximately one-half of the difference between Wife's reasonable expectation of $788.05 and her actual pension award, $480.52. **See** Trial Court Opinion, 10/20/16, at 2-3.

[3] Because the 30-day appeal period from the trial court's October 20, 2016 order ended on Saturday, November 19, 2016, Husband had until Monday, November 21, 2016 to file his notice. **See** 1 Pa.C.S.A. § 1908 (computation of time).

- 3 -

Husband's Brief at 6.

Husband raises two interrelated claims that challenge an order granting Wife's petition to vacate the parties' divorce decree and modify their marital settlement agreement. Hence, we shall review his claims in a single discussion. A trial court's exercise or refusal to exercise its authority to open, vacate, or strike a divorce decree is reviewable on appeal for an abuse of discretion. *See Ratarsky v. Ratarsky*, 557 A.2d 23, 25-27 (Pa. Super. 1989), *affirmed*, 581 A.2d 1377 (Pa. 1990).

Husband's claims in this appeal center upon the application of 23 Pa.C.S.A. § 3332, which governs a trial court's authority to open or vacate a divorce decree. Specifically, Husband points out that because Wife filed her petition more than 30 days after entry of the parties' divorce decree, intrinsic fraud was no longer available as a justification to open or vacate the decree. Additionally, Husband asserts that Wife failed to establish extrinsic fraud, or any other basis, that would authorize the trial court to vacate the divorce decree outside the 30-day period found in § 3332. We agree.

Section 3332 provides:

A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S.[A] § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be

- 4 -

made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa.C.S.A. § 3332.

Section 3332 sets forth clear evidentiary requirements and time constraints on a court's authority to open or vacate a divorce decree. "For a petition to open, the motion must be made within thirty days [of the divorce decree and allege] intrinsic fraud or new evidence. For a motion to vacate, the petition must be filed within five years [of the divorce decree] where the attack is based on extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record." *Fenstermaker v. Fenstermaker*, 502 A.2d 185, 188 (Pa. Super. 1985). "The intent of [section 3332 is] to codify the extraordinary circumstances which will outweigh the interests of the parties and the court in finality, and to delimit the time periods which within such circumstances must be established." *Anderson v. Anderson*, 544 A.2d 501, 505 (Pa. Super. 1988).

Here, Wife challenged the marital settlement agreement in a petition for permanent alimony that she filed on November 14, 2013, approximately 11 months after the entry of the parties' divorce decree on December 19, 2012. Since she filed her petition more than 30 days after entry of the divorce decree, her submission cannot be construed as a timely motion to open and the question of whether intrinsic fraud existed is moot. *See* 23

Pa.C.S.A. § 3332; *Ratarsky*, 557 A.2d at 25. Thus, the trial court lacked authority to open the divorce decree because of intrinsic fraud.

Wife offers alternate grounds in defense of the trial court's decision to vacate the parties' divorce decree and modify their marital settlement agreement. Specifically, Wife alleges that Husband induced her reliance on his representations that she would receive $788.05 each month if the parties agreed to divide equally the pension. In addition, Wife argues that these same facts show a mutual mistake of fact that allowed the trial court to alter the terms of the parties' marital settlement agreement.[4]

This is not a case where extrinsic fraud precluded Wife's opportunity for a fair hearing. Even if we assume that Wife relied upon Husband's inaccurate information about the value of anticipated pension benefits, these circumstances would not constitute extrinsic fraud under the Divorce Code. In *Fenstermaker*, *supra*, we explained the distinction between extrinsic fraud and intrinsic fraud as defined by our Supreme Court in *McEvoy v. Quaker City Cab Co.*, 110 A. 366, 368 (Pa. 1920):

> By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of

---

[4] As additional support for her claims, Wife alleges that Husband removed funds from insurance policies and 401(k) retirement plans. These actions, however, are wholly unrelated to the relief ordered by the trial court and, therefore, would not support affirmance even if the claims proved meritorious. Hence, we shall not consider them further.

compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: *Pico v. Cohn*, [27 P. 537 (Cal. 1891)]. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial. *Bleakley v. Barclay*, [89 P. 906 (Kan. 1907)].

*Fenstermaker*, 502 A.2d at 188, *quoting McEvoy*, 110 A. at 368.

A review of the record reveals that Husband's actions did not constitute extrinsic fraud and did not prevent a fair hearing. Wife principally relies on a document dated October 27, 2011 and entitled, "Kmart Pension Benefit Calculation Summary." According to one of the payment options listed in the summary, labeled as "100% Joint and Survivor Annuity," both Husband and his beneficiary would be entitled to monthly payments equal to $788.05. Wife claims that she and her attorney received this document prior to the parties' August 2012 hearing and that she relied upon it in entering the marital settlement agreement at issue.

The property settlement in question was entered into by the parties following extensive, counseled negotiations. At the August 2012 hearing, Wife agreed to divide equally Husband's pension benefit. No specific

payment was discussed on the record at the hearing and no specific, anticipated sum was introduced into the record. Neither Wife nor her counsel stated that Wife's agreement to the "equal division" term was contingent upon her receipt of a specific sum or made in reliance upon the Kmart calculation summary. Wife also confirmed that she received a full and complete disclosure of the marital assets available for distribution, that the agreement constituted a full and final settlement of the parties' marital property issues, and that she approved of the terms of the settlement. Wife does not allege that Husband participated in the preparation of the benefits summary calculation nor does she assert that Husband harbored doubts about the accuracy of its prediction of future benefits payments. She also fails to allege that Husband fraudulently transferred any funds out of his pension plan, after the summary was prepared, or otherwise manipulated or diverted part of this asset, thereby causing a reduction of his pension benefit.

The record is thus clear that, at the time of the August 2012 hearing when the marital settlement agreement was reached, Husband made full, complete, and accurate disclosure of the known facts surrounding his pension. Moreover, both Wife and her counsel were aware of Wife's marital interest in Husband's pension and the identity of the organization that

administered his account.[5] If Wife or her attorney wanted to know more about Husband's pension benefit, all they (or a retained actuary or accountant) needed to do was to contact the administrator of the pension plan. In the alternative, Wife or her counsel could have demanded a sum certain as payment from Husband. Neither Wife nor her attorney, however, saw fit to pursue these options. Since property settlement negotiations remain an adversarial process, and counsel has a duty to protect his client's best interests by fully investigating the extent and nature of marital assets, we cannot impute fraud onto Husband under the present circumstances. Accordingly, we conclude that the trial court lacked authority to vacate the parties' divorce decree on the basis of extrinsic fraud. *See Fenstermaker*, 502 A.2d at 188-189.

Finally, we reject Wife's claim that an alleged mutual mistake of fact justified the trial court's decision to vacate the parties' divorce decree and modify their property settlement. Although Wife is correct that we construe property settlement agreements pursuant to principles of contract law, *see*, *e.g.*, *Purdy v. Purdy*, 715 A.2d 473, 475 (Pa. Super. 1998) (marital settlement agreement that is incorporated but not merged into divorce decree is subject to the law of contracts), that is not the issue we confront in

---

[5] The calculation summary lists a telephone number for the Kmart Pension Service and states that revised calculations could be obtained from the organization.

this case. Here, we must decide whether Wife made the necessary threshold showing under § 3332 to trigger the trial court's authority to open or vacate the divorce decree and modify the property settlement agreement. As we stated above, a petition to open that alleges intrinsic fraud or new evidence must be made within 30 days of the divorce decree. **Fenstermaker**, 502 A.2d at 188. A motion to vacate or strike a decree that alleges extrinsic fraud, lack of subject matter jurisdiction, or a fatal defect on the face of the record must be filed within five years of the divorce decree. **Id.** at 188. Our prior case law has held that a mutual mistake of fact "is not equivalent to new evidence that will sustain an attack on the validity of [a] decree" made within 30 days of entry.[6] **Holteen v. Holteen**, 605 A.2d 1275, 1276 (Pa. Super. 1992) (failure of marital settlement agreement to predict every eventuality is no basis for modification). Moreover, we have declined to review mutual mistakes of fact as a form of extrinsic fraud. **See id.** For these reasons, the trial court erred to the extent it relied on a mutual mistake of fact to revisit the parties' divorce decree and modify their marital settlement agreement.

In sum, Wife could not rely on intrinsic fraud to open the parties' divorce decree because she filed her petition more than 30 days after the decree was entered. In addition, Wife failed to adduce sufficient facts to

_____

[6] Mutual mistake, of course, displaces fraud given the very different mental states at play in these alternate grounds for opening a divorce decree.

establish extrinsic fraud for a petition filed within five years of a divorce decree.  Since the trial court lacked authority under § 3332 to open, vacate, or strike the parties' divorce decree, Wife's petition should have been denied.

Order reversed.  Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2018