2022 PA Super 15

| | | |
|---|---|---|
| WILLIAM FRANK MARIANO III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALYSSA ANN RHODES | : | |
| | : | |
| Appellant | : | No. 2335 EDA 2020 |

Appeal from the Order Entered October 26, 2020,
in the Court of Common Pleas of Delaware County,
Civil Division at No(s):  No. 2020-004278.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.*

OPINION BY KUNSELMAN, J.:                    **FILED JANUARY 26, 2022**

In this matter, we consider whether the prothonotary's rejection of a spouse's imperfect pleadings constitute "a fatal defect apparent upon the face of the record," thereby obligating a court to vacate a divorce decree under 23 Pa.C.S.A. § 3332.  Appellee, William Frank Mariano III (Husband), obtained what amounted to an uncontested divorce decree, after the responsive pleadings filed by Appellant, Alyssa Ann Rhodes (Wife), were rejected by the prothonotary's office.  Although Wife's counsel timely-submitted these pleadings, counsel neglected to enter his appearance and pay the corresponding filing fee.  The prothonotary's office then crossed out the timestamp on the pleadings, and informed counsel of his mistake.  Counsel entered his appearance and paid the fee, but not until after the deadline

_____

* Former Justice specially assigned to the Superior Court.

passed. The trial court deemed these pleadings untimely and issued the divorce decree. Wife filed a motion to vacate, arguing the prothonotary's rejection constituted a fatal defect. The trial court denied Wife's request, and she appealed. After careful review, we agree the prothonotary's office lacked the authority to reject Wife's pleadings, and thus we vacate the divorce decree and remand for further proceedings.

The factual and procedural history is not in dispute. The parties married in August 2016 and separated in 2018. Two years after they separated, on July 6, 2020, Husband filed a complaint in divorce pursuant to 23 Pa.C.S.A. § 3301(d) ("Irretrievable breakdown"). By August 11, 2020, Husband had initiated the necessary steps to obtain a decree. He served Wife with the complaint, the requisite affidavit and blank counter-affidavit, as well as his notice of intention to file the praecipe to transmit record.

Under the Pennsylvania Rules of Civil Procedure, once Wife was served with these documents, she had 20 days – *i.e.,* until August 31 – to reply. Otherwise, Husband could file a praecipe to transmit the record and obtain a divorce decree, at which point Wife would forfeit any economic claims related to their marriage.[1] Wife replied. She completed the counter-affidavit, as well as an answer and counterclaim, wherein she disputed Husband's averments and requested equitable distribution.[2] Counsel for Wife sent these pleadings to be filed with the Delaware County Office of Judicial Support (colloquially,

---

[1] **See** Pa.R.C.P. 1920.42(c).
[2] **See** Pa.R.C.P. 1920.72; **see also** Pa.R.C.P. 1920.14; **and see** Pa.R.C.P. 1920.15.

the prothonotary's office). The prothonotary's office timestamped the pleadings on August 28, 2020 – within the 20-day deadline.

However, the prothonotary's office then informed counsel that he "needed to pay a fifty-dollar entry of appearance fee." *See* Wife's Brief at 3. On September 1, 2020 – one day after the 20-day deadline – Wife's counsel went to the prothonotary's office in person, filed an entry of appearance and paid the filing fee. At this point, counsel was under the impression that the defect had been cured.

In the meantime, on August 31, Husband had filed the praecipe to transmit record. On September 29, 2020, the trial court issued the divorce decree, and Wife's economic claims were forfeited. Only then did Wife's counsel realize that Wife's responsive pleadings were never officially docketed or otherwise reinstated. Although the responsive pleadings had been timestamped before the deadline, their timestamps were crossed out. October 6, 2020, Wife filed a motion to vacate the divorce decree. The court denied Wife's motion on October 26, 2020, and she timely filed this appeal.

Wife presents one issue for our review:

> Did the trial court abuse its discretion by failing to grant [Wife's] motion to vacate the decree in divorce, seven days after its entry, due to a clerical docketing mistake?

Wife's Brief at 2 (superfluous capitalization omitted).

We begin with our well-settled standard of review. "A trial court's exercise or refusal to exercise its authority to open, vacate, or strike a divorce

decree is reviewable on appeal for an abuse of discretion." ***Bardine v. Bardine***, 194 A.3d 150, 152 (Pa. Super. 2018) (citation omitted). "An abuse of discretion is not merely an error of judgment but is found where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record." ***Fischer v. UPMC Northwest***, 34 A.3d 115, 120 (Pa. Super. 2011).

Wife's challenge involves the application of 23 Pa.C.S.A. § 3332, which governs a trial court's authority to open or vacate a divorce decree. The intent of Section 3332 is "to codify the extraordinary circumstances which will outweigh the interests of the parties and the court in finality, and to delimit the time periods which within such circumstances must be established." ***Bardine***, 194 A.3d at 153 (citing ***Anderson v. Anderson***, 544 A.2d 501, 505 (Pa. Super. 1988)). Importantly, the concern is no longer about economic fairness. "[A] general plea to economic justice will not satisfy the stringent standard set forth [in Section 3332]." ***Melton v. Melton***, 831 A.2d 646, 651 (Pa. Super. 2003) (citing ***Justice v. Justice***, 612 A.2d 1354, 1357 (Pa. Super. 1992)). This "stringent standard" involves clear evidentiary requirements and time constraints on a court's authority to open or vacate a divorce decree:

> **§ 3332. Opening or vacating decrees**
>
> A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S.A. § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence

relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa.C.S.A. § 3332.

We observe Wife sought to **vacate** the decree, not open it. "For a motion to vacate, the [motion] must be filed within five years of the divorce decree where the attack is based on extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record." **Bardine**, 194 A.3d at 153 (citing **Fenstermaker v. Fenstermaker**, 502 A.2d 185, 188 (Pa. Super. 1985)).

Wife argues that the prothonotary's rejection of her pleadings constituted a fatal defect under Section 3332, and that trial court abused its discretion for not finding the same. Wife explains that the prothonotary timestamped her pleadings, and that these stamps showed that the pleadings were timely filed three days before the deadline. Wife's counsel was then informed that he had to enter his appearance and pay the fee. **See** Wife's Brief at 1, 2. Counsel complied and "was left to believe the documents were now successfully filed with the court." **See id** at 4. Thus, Wife concludes that that defect was either the prothonotary's failure to file the pleadings after their initial receipt, or in the alternative, the prothonotary's failure to reinstate the

pleadings after counsel entered an appearance. ***See id***. Wife also reasons that "defect" could be construed as "extrinsic fraud" on the part of the trial court. In other words, Wife reasons that she is entitled to relief under not one, but two criteria of Section 3332. ***See id.***

In opposition to Wife's appeal, Husband and the trial court maintain that the fault lies solely with Wife's counsel. ***See*** Husband's Brief at 9; ***see also*** Trial Court Opinion (T.C.O.), 3/24/21, at 6. The trial court specifically notes that Wife's counsel compounded the original mistake by failing to ensure the pleadings were ultimately docketed after entering his appearance. ***See*** T.C.O. at 6.[3]

Turning now to the merits, we agree with Wife's position that the prothonotary's rejection constituted a fatal defect apparent upon the face of the record.[4] We cannot discern from the record what was the prothonotary office's specific reason for rejecting Wife's pleadings – whether it was counsel's failure to enter his appearance, or counsel's failure to pay the necessary fee to enter his appearance, or both. In any event, the prothonotary's office simply had no authority to reject Wife's documents, either for counsel's failure to enter his appearance or for his failure to pay the filing fee.

_____

[3] We note that Wife's counsel claims he could not ensure the pleadings were docketed, even after the entry of appearance, due to the Covid-19 closures and the inability to access the docket online.

[4] Based on this conclusion, we need not address Wife's alternate theory of extrinsic fraud.

Upon our review, we discover no precise local rule requiring counsel to first enter an appearance in order to submit documents to the prothonotary's office. But even if the trial court gleaned such an obligation from a local rule, counsel's noncompliance with the local rule could not be a basis for rejecting Wife's pleadings in this instance. "It is axiomatic that if a local rule conflicts with a statewide rule of procedure, the local rule is invalid." ***Everhardt v. Akerley***, 665 A.2d 1283, 1286 (Pa. Super. 1995) (citations omitted). Here, we have a statewide rule explicitly stating: "Entry of a written appearance is not mandatory." ***See*** Pa.R.C.P. 1012(a).

We can only assume the prothonotary's basis for rejecting Wife's pleadings was counsel's noncompliance with Delaware County Local Rule 205.2(b), which concerns cover sheets.[5] Under Delaware County Local Rule 205.2(b), a moving party – or a party filing an answer – must include a cover sheet accompanying the pleading. The record suggests that Wife's counsel neglected to do this.

On this point, there exists still another statewide rule, limiting the prothonotary's ability to reject a pleading. Pennsylvania Rule of Civil Procedure 205.2 provides: "No pleading or other legal paper that complies with the Pennsylvania Rules of Civil Procedure shall be refused for filing by the prothonotary based on a requirement of a local rule of civil procedure or

---

[5] Our assumption is informed by the 2010 Explanatory Comment to Delaware County Local Rule 205.2(b), which explains that this local rule replaced Delaware County Local Rule 241(a) ("Civil Cover sheet and Entry of Appearance Form").

judicial administration, ***including*** local Rules 205.2(a) and ***205(b)*** [relating to cover sheets]." (Emphasis added). The law could not be clearer. The prothonotary may not reject a filing for noncompliance with the local rule concerning cover sheets, so long as the pleading complies with the statewide rule. The 1985 Comment to Pa.R.C.P. 205.2 explains why a local prothonotary must accept the filings:

> A number of courts of common pleas have recently promulgated local rules which purport to facilitate judicial administration but which function to impair the statewide practice of law by imposing prerequisites to the filing of legal papers with the prothonotary. These requirements include appending a cover sheet to a complaint and the filing of a separate written entry of appearance.

> While a local court should be free to require additional information to aid in the orderly administration of justice, an out-of-county attorney or litigant ***should not be penalized with a missed filing date because of the failure to supply the required information.*** Therefore, new Rule 205.2 requires the prothonotary to accept for filing all pleadings and other legal papers which comply with the statewide rules of civil procedure. Once the paper has been filed, the local court may require compliance with other local provisions. The new rule attempts to strike a balance between local court administration and the requirements of a unified judicial system.

Pa.R.C.P. 205.2 – Explanatory Comment -1985 (emphasis added); ***see also*** Pa.R.C.P. 239 ("Local Rules") – Explanatory Comment – 2003 ("The primary obstacle to the statewide practice of law has been the inability of lawyers to

learn how each court of common pleas actually operates, particularly with respect to the pre-trial applications.").[6]

Our holding does not obviate the need or requirement for an attorney to enter an appearance. Rather, we hold that the failure to enter an appearance cannot be a basis for a prothonotary's rejection of the pleadings. The entry of an appearance is particularly important in domestic relations matters, where a great number of litigants vacillate between counsel-representation and self-representation. When attorneys cannot discern whether the opposing party is represented by counsel, those attorneys face ethical dilemmas – to say nothing of the difficulty they face when trying to provide proper notice. *See* Rule of Professional Conduct 4.2 ("Dealing with Unrepresented Person") ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.") We do not hold that Delaware County's procedures are unlawful,

_____

[6] Perhaps the source of the prothonotary's confusion was Pennsylvania Rule of Civil Procedure 205.5(b), which states: "[t]he prothonotary **shall not accept** a filing commencing an action without a completed cover sheet." (Emphasis added). However, this provision quite clearly does not apply to divorce actions. *See* Pa.R.C.P. 205.5(a)(1)(iv) ("This rule shall apply to all actions govern by the rules of civil procedure except the following: (iv) actions for divorce…"). And if counsel's noncompliance with Pennsylvania Rule of Procedure 205.5(b) cannot be a legitimate basis for rejecting Wife's divorce pleadings, neither can her noncompliance with the corresponding Delaware County Local Rule 205.2. *See Everhardt, supra.*

merely that these procedures could not be a basis for rejecting Wife's pleadings.

To the extent that the prothonotary rejected Wife's pleadings for counsel's initial nonpayment of the filing fee, we similarly conclude that the prothonotary lacked the authority to do so. While our various Rules provide that parties must pay the requisite filing fees, we have routinely held that nonconforming pleadings have no bearing on their timeliness.

For instance, Pennsylvania Rule of Procedure 205.1 provides, in relevant part:

> Any legal paper….may be delivered or mailed to the prothonotary, sheriff or other appropriate officer **accompanied by the filing fee, if any**. […] A paper sent by mail shall not be deemed filed until received by the appropriate office.

Pa.R.C.P. 205.1. (Emphasis added).

In ***Nagy v. Best Home Services, Inc.***, 829 A.2d 1166 (Pa. Super. 2003), we interpreted Pennsylvania Rule of Civil Procedure 205.1 to mean that, for purposes of time computation, a document was filed when it was received by the prothonotary, notwithstanding that document's nonconformity with regular procedure. In ***Nagy***, the appellant sought to appeal from a judgment. The appellant mailed the notice of appeal, and the prothonotary received it. However, the prothonotary did not timestamp it or enter it on the docket. Instead, the prothonotary returned the notice of appeal by mail because the notice was unsigned and because the notice did not include a

copy of the judgment. By the time counsel remedied the mistakes, the notice of appeal was untimely. Counsel for the appellant filed a petition with the trial court for leave to file the appeal *nunc pro tunc*, but the trial court denied the request. ***Nagy***, 829 A.2d at 1167. Although we were tasked with determining whether the appellant complied with our Rules of Appellate procedure, we relied on our Supreme Court's construction of Pennsylvania Rule of Civil Procedure 205.1 to conclude that a document is filed when the prothonotary receives it. ***Id.*** at 1170 (citing ***Criss v. Wise***, 781 A.2d 1156, 1159 (Pa. 2001)); ***see also Griffin v. Central Sprinkler Corp.***, 823 A.2d 191 (Pa. Super. 2003).

We explained that, while the prothonotary can inspect documents for compliance, and inform a party of any defect, the prothonotary must still accept the pleading:

> A prothonotary may have the power, and even the duty, to inspect documents tendered for filing and to reject them if they are not on their face in the proper form specifically required by the Rules, but this power is limited. ***He is not in the position of an administrative officer who has discretion to interpret or implement rules and statutes***.... The prothonotary must accept papers and file them. He must also collect fees fixed by the legislature. He has no discretion in this matter nor does he act in a judicial capacity.

***Nagy***, at 1169-70 (citing ***Warner v. Cortese***, 288 A.2d 550 (Pa. Cmwlth. 1972) (emphasis original)). The prothonotary's power to reject nonconforming documents is limited to notifying the proper party that the document is defective so that the defect may be corrected through

- 11 -

amendment or addendum. *Id.* at 1170. "To hold otherwise would be to confer on the prothonotary the power to 'implement' the Rules governing the form of an appeal and to determine, based upon criteria other than the day they are received, which appeals are timely." *Id.*

A ruling from our sister court is more factually analogous. In *Southeastern Pennsylvania Transp. Authority v. DiAntonio*, 618 A.2d 1182 (Pa. Cmwlth. 1992), Ercole DiAnonio was injured while a passenger on a bus operated by the Southeastern Pennsylvania Transportation Authority (SEPTA). DiAntonio's lawsuit went unanswered by SEPTA, so DiAntonio sent a notice of intention to take a default judgment. Only then did SEPTA prepare and deliver an answer to the prothonotary. However, the answer was one of a number of pleadings SEPTA filed at the same time, and the filing fees were paid with a single check. The prothonotary timestamped the answer, but then discovered that the filing fee check was insufficient to cover all the pleadings SEPTA filed. Without explanation, the prothonotary decided to reject only the answer to DiAntonio's complaint due to the deficient filing fee. SEPTA's answer was never entered on the docket. The trial court entered default judgment in favor of DiAntonio. SEPTA then learned that its answer was never docketed. SEPTA appealed and the Commonwealth Court reversed. *See Southeastern Pennsylvania Transp.*, 618 A.2d at 1183-84.

The Commonwealth Court explained that SEPTA's answer was deemed filed on the day it was timestamped by the prothonotary, and that it should have been timely docketed. *Id.* at 1184. "To decide otherwise would eliminate

reasonable reliance by the parties on a prothonotary's acceptance of a pleading." *Id.*

Although the decisions of Superior Court are not bound by the decisions of the Commonwealth Court – and *vice versa* - it bears observing that the *Southeastern Pennsylvania Transp.* may be distinguished from *Nagy* in one significant way. In *Southeastern Pennsylvania Transp.*, the Commonwealth Court opined that the prothonotary retained authority to reject a pleading for the nonpayment of a filing fee, but that because the prothonotary timestamped SEPTA's answer, the answer had to be deemed "filed" and could not be summarily returned. *Id.* Thus, even if we were to limit our analysis to the facts of *Southeastern Pennsylvania Transp.*, we would still conclude that Wife's pleadings were improperly rejected, because the prothonotary's office had to accept the pleadings, regardless of their defects, once they were timestamped.

Finally, though somewhat less comparable, we also find persuasive our decision in *First Union Nat'l Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719 (Pa. Super. 2002). There, the question was whether the appellant's appeal should be dismissed due to counsel's failure to pay the filing fee, at the time that the notice of appeal was filed. That case is less beneficial than the above precedents because the issue turned on the precise language in our Rules of Appellate Procedure. We determined that Pa.R.A.P. 905(c) imposes an absolute duty on an appellate to pay the required filing fee (or obtain leave to proceed *in forma pauperis*) at the time when the notice of appeal is filed,

- 13 -

but we held that a breach of that duty does not automatically render the appeal invalid. **First Union Nat'l Bank**, 812 A.2d at 722. "[T]he perfection of [an] appeal does not depend in any way on the payment of the filing fee." **Id.** at 723. While the appellate court still retained discretion to dismiss the appeal based on the failure to tender the required fee, that remedy is discretionary. But, in any event, the filing of the notice will still be deemed timely. **Id. First Union Nat'l Bank** is useful here, because it illustrates how a court is not without recourse when a party fails to pay the filing fee.

Read together, these cases provide sufficient clarity for us to hold the prothonotary lacked the authority to reject Wife's pleadings due to counsel's initial failure to pay the filing fee. Although the prothonotary had the duty to inform counsel that the fee was owed, the prothonotary could not reject Wife's pleadings for nonpayment – especially after they were received and timestamped (**see Nagy**; **see also Southeastern Pennsylvania Transp.**). At that point, counsel relied on the prothonotary's acceptance of his client's pleadings. Of course, counsel was not excused from paying the fee, and the trial retained discretion to dismiss a Wife's counterclaim if the filing fee went unpaid (**see First Union Nat'l Bank**). But that question is distinct from the matter at hand, which is whether the pleadings were timely filed. We conclude that they were.

Therefore, because Wife's pleadings were timely filed, the divorce decree suffers from "a fatal defect apparent upon the face of the record." Wife's timely pleadings indicated that she neither admitted, nor failed to deny,

the averments contained in Husband's affidavit under Section 3301(d) of the Divorce Code. **See** Pa.R.C.P. 1920.42(c)(1)(iii), (2). Thus, the court's entry of the decree was improper. Consequently, the trial court erred when it denied Wife's motion to vacate the divorce decree. **See Danz v. Danz**, 947 A.2d 750 (Pa. Super. 2008).

Divorce decree vacated and case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2022